IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HAARSLEV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2567-KHV |
| | ) | |
| JEFF MUIR and JLM MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On November 30, 2023, in the District Court of Johnson County, Kansas, plaintiff filed suit against Jeff Muir and JLM Management, LLC, alleging tortious interference with business expectancy (Count I), tortious interference with contracts (Count II), civil conspiracy (Count III) and unjust enrichment (Count IV). See Petition (Doc. #1-1) filed December 26, 2023. On December 26, 2023, defendants removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). This matter comes before the Court on Defendants' Motion To Dismiss And Memorandum In Support (Doc. #4) filed January 2, 2024. For reasons stated below, the Court sustains defendants' motion.

**Legal Standard**

When defendants file a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., plaintiff bears the burden to establish personal jurisdiction over defendants. Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch, 750 F.3d 1178, 1179–80 (10th Cir. 2014). At these preliminary stages of litigation, plaintiff's burden to prove personal jurisdiction is light. AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054, 1056 (10th Cir. 2008). To defeat the motion, plaintiff need only make a prima facie showing of

personal jurisdiction. Id. Plaintiff can do so by showing facts, through affidavit or other written materials, that if true would support jurisdiction over defendants. Id.; see also Wenz v. Memery Crystal, 55 F.3d 1503, 1508 (10th Cir. 1995) (plaintiff can support jurisdictional allegations "by competent proof"). When evaluating the prima facie case, the Court must resolve all factual disputes in favor of plaintiff. AST Sports, 514 F.3d at 1056.

**Factual Background**

Plaintiff's petition alleges as follows:

Plaintiff is a North Carolina corporation that designs, manufactures, sells and installs equipment for the food, food byproducts and pet food industries. Plaintiff has its principal place of business in Lenexa, Kansas and is registered to do business in Kansas. As part of its operations, plaintiff hires and contracts with vendors to provide labor and materials for various projects. Plaintiff employed Michael Chapple, who worked as Sales & Project Engineer in Kansas. Chapple acted as project manager on the DemKota Project, a manufacturing and installation project in South Dakota. Before plaintiff hired him, Chapple worked in Idaho and formed a connection with Jeff Muir, a resident of Idaho.

Chapple and Muir knew each other from Muir's previous employment at JJC Fabrication and Mine Maintenance and Christensen Machine, Inc. ("CMI"). In March of 2022, CMI terminated Muir's employment. Muir then created JLM Management, LLC ("JLM"), an Idaho limited liability company which provides management and consulting services. JLM has its principal place of business in Idaho. Muir is the sole member and owner of JLM.

Before Muir created JLM, Chapple had hired Tom's Metal Enterprises, LLC d/b/a Industrial Metal Enterprises, LLC ("IME") to provide materials and equipment for plaintiff's

DemKota project.[1]  After March of 2022, Chapple—skirting proper channels—approved JLM (Muir's LLC) as a supplier to replace another supplier for Haarslev.[2]  Because Haarslev did background checks on large orders, Chapple directed Muir and JLM to place large orders through IME.[3]  Chapple told IME to increase its invoices to Haarslev by an additional 10 per cent and pay part of the money to defendants.  IME did so.  Its invoices did not disclose the 10 per cent mark-up.  Chapple approved the IME invoices to Haarslev.

Because of the 10 per cent mark-up, plaintiff paid more than necessary to complete the DemKota and FPL Foods Projects.  On DemKota, Muir and JLM received $128,000.  Petition (Doc. #1-1), ¶ 35.  On FPL Foods, Muir and JLM received $29,746.23.  Id., ¶ 38.  In total, IME paid Muir and JLM $157,746.23 of the costs that it charged to plaintiff for both projects.[4]  Id., ¶ 40.  Defendants' acts caused each project to run over budget by at least $75,000.[5]  Id., ¶¶ 44–45.

---

[1]     Plaintiff does not allege where IME has its principal place of business or where it is incorporated.

[2]     Plaintiff does not allege projects on which defendants engaged with Haarslev or that defendants had dealings with IME with regard to either project.

[3]     Plaintiff does not allege that defendants actually placed orders, large or small, with IME.

[4]     As noted, plaintiff does not allege that defendants provided services or materials for either project.  The Court construes plaintiff's allegation to be that IME used proceeds from its own work for plaintiff to fund the kickbacks.

[5]     The acts to which plaintiff refers are unclear.  Plaintiff alleges that defendants "directly benefited" from a kickback scheme between Chapple and IME, but it contains no non-conclusory allegation that defendants actively conspired to receive the kickbacks or even had knowledge of a conspiracy between Chapple and IME.  See Petition (Doc. #1-1), ¶ 29.  As noted, plaintiff does not allege that defendants had a relationship with either project, or with IME, or that defendants provided any goods or services to plaintiff.  As pled, the so-called kickback conspiracy lacks facial plausibility.  Plaintiff alleges that the goal of the conspiracy was "for personal financial gain and to further defendants' own relationship with IME over the interests of

(continued. . .)

In addition, plaintiff suffered financial and reputational harm with customers and vendors.  Id., ¶¶ 41–42.

On November 30, 2023, plaintiff filed suit in state court against Muir and JLM, alleging tortious interference with business expectancies (Count I), tortious interference with contracts (Count II), civil conspiracy (Count III) and unjust enrichment (Count IV).  On December 26, 2023, defendants removed the case to federal court.

On January 2, 2024, defendants filed a motion to dismiss for lack of personal jurisdiction. See Defendants' Motion To Dismiss (Doc. #4).

In response to defendants' motion to dismiss, plaintiff submits an affidavit from Troels Svendsen, president of Haarslev.  Affidavit Of Troels Svendsen (Doc. #12-1).  The affidavit states that defendants interacted daily with plaintiff's employees, including Chapple, who worked out of plaintiff's office in Kansas.  Id., ¶¶ 16–17.  The affidavit also states that in January of 2023, defendants submitted forms for plaintiff to approve them as vendors.  Id., ¶¶ 6–7.  It also states that the parties directly engaged in the following transactions: (1) between January 26 and May 22, 2023, JLM entered into 18 purchase order agreements which plaintiff issued out of its headquarters in Kansas, (2) JLM issued and addressed 20 invoices to plaintiff's headquarters in Kansas and (3) between January 26 and June of 2023, plaintiff paid JLM approximately $443,142.93 from Kansas.  Id., ¶¶ 10–14.[6]

---

[5] (. . .continued)
Haarslev."  Id., ¶ 67.  This allegation is also implausible because plaintiff does not allege that defendants had any relationship at all with IME or postulate why IME would conspire to defraud Haarslev (its customer) to benefit a third party with whom it had no relationship.

[6]   It is unclear whether IME had any involvement in the 18 contracts between plaintiff and defendants or whether these contracts related to either project.  Plaintiff does not claim that IME was involved in these contracts, that plaintiff's payments to JLM were inflated,

(continued. . .)

**Analysis**

For the Court to exercise personal jurisdiction in a diversity action, plaintiff must show that personal jurisdiction is proper under the laws of the forum state and that doing so comports with the due process requirements of the United States Constitution. See Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). The Kansas long-arm statute permits the exercise of any jurisdiction that is consistent with the due process requirements of the United States Constitution. See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304–05 (10th Cir. 1994); see also K.S.A. § 60-308(b)(1)(L). Accordingly, the Court need not conduct a separate personal jurisdiction analysis under Kansas law, and instead may proceed directly to the due process inquiry under federal law. See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (where long-arm statute confers maximum jurisdiction consistent with Due Process Clause, statutory inquiry effectively collapses into constitutional analysis).

The due process analysis requires the Court to determine (1) whether defendants have minimum contacts with the forum state such that it should "reasonably anticipate being haled into court there" and (2) if defendants' actions establish minimum contacts, whether the exercise of personal jurisdiction over it offends "traditional notions of fair play and substantial justice." AST Sports, 514 F.3d at 1057 (quotation marks and citations omitted). To satisfy the "minimum contacts" standard, plaintiff can establish that the Court has either (1) general jurisdiction or

---

[6] (. . .continued)
or that anything irregular occurred in the business dealings which occurred directly between plaintiff and defendants. Apparently, plaintiff's theory is that totally aside from its contracts with Muir and JLM, it had other contracts with IME, which submitted inflated invoices directly to plaintiff and received wrongful proceeds which it directed (in part) to defendants. Plaintiff does not allege that the inflated invoices emanated from defendants or suggest why ill-gotten proceeds would flow to defendants. On this record, it appears that defendants had legitimate business arrangements with plaintiff that were not implicated in any kickback scheme.

(2) specific jurisdiction.  Rockwood Select, 750 F.3d at 1179.

Plaintiff alleges that based on defendants' commission of tortious acts that caused injury to plaintiff in Kansas, the Court may exercise specific personal jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b).  In addition, plaintiff argues that defendants have "systematic and continuous" contact with plaintiff in Kansas.  Plaintiff's Suggestions In Opposition To Defendant's [sic] Motion To Dismiss And Memorandum In Support (Doc. #12) filed January 23, 2024 at 4, 8.  Because plaintiff alleges jurisdiction under K.S.A. § 60-308(b), and § 60-308(b)(2) confers general jurisdiction over nonresidents whose contacts with Kansas are "substantial, continuous and systematic," the Court interprets plaintiff's complaint as alleging both general and specific jurisdiction and analyzes both grounds for jurisdiction.

I.     **General Jurisdiction**

Plaintiff's claims do not arise from direct business dealings with defendants.  Plaintiff's claim is that defendants "directly benefited" from a conspiracy to overcharge plaintiff on contracts between it and IME.  Petition (Doc. #1-1), ¶ 29.  Plaintiff argues that the Court has general jurisdiction over this claim because defendants (1) submitted vendor approval forms which indicated that they intended to do business with plaintiff, a Kansas resident, (2) entered into purchase order agreements which plaintiff issued out of its office in Kansas, (3) sent invoices to plaintiff's office in Kansas and (4) accepted payments that plaintiff issued out of its office in Kansas.

Courts may exercise general personal jurisdiction over a nonresident defendant "if its contacts with the State are so continuous and systematic that the person is essentially at home in the State."  XMission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020) (quotation marks and citation omitted).

A. General Jurisdiction Over JLM

General personal jurisdiction in a forum other than defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State." Daimler AG v. Bauman, 571 U.S. 117, 139 n.19 (2014). To evaluate whether JLM's contacts with Kansas are so systematic and continuous that the Court may exercise general jurisdiction, the Court considers (1) whether JLM solicits business in Kansas through a local office or agents; (2) whether JLM sends agents into Kansas on a regular basis to solicit business; (3) the extent to which JLM holds itself out as doing business in Kansas through advertisements or bank accounts; and (4) the volume of business that JLM conducts in Kansas. Trierweiler v. Croxton Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996).

JLM does not have an office or agent in Kansas, has never sent an agent into Kansas for business purposes and does not directly advertise within Kansas. Affidavit Of Jeffrey Muir (Doc. #4-3), ¶¶ 11–13. The first three factors therefore weigh heavily against the Court's exercise of general jurisdiction over JML. Plaintiff nevertheless argues that the volume of business which JML conducts with plaintiff's headquarters in Kansas warrants the exercise of general jurisdiction. Suggestions In Opposition (Doc. #12), at 3–4, 7. The Court disagrees.

In some circumstances, revenue earned from business in a particular state might suffice to establish general jurisdiction. But the Court must analyze the volume of JLM's business in Kansas ($443,142.93, apparently) in the context of its overall operations. See Daimler, 571 U.S. at 139 n.20 (general jurisdiction inquiry does not focus solely on magnitude of defendant's in-state contacts; general jurisdiction calls for appraisal of corporation's activities in their entirety, nationwide and worldwide); Svendsen Affidavit (Doc. #12-1), ¶ 13. Plaintiff does not address the

volume of JLM's overall business operations. Accordingly, plaintiff has not shown that the Court can exercise general personal jurisdiction over JLM.

### B. General Jurisdiction Over Muir

For individuals, the paradigm forum for the exercise of general personal jurisdiction is the individual's domicile. Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 255 (2017). For purposes of diversity jurisdiction, state citizenship is the equivalent of domicile. Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983). The parties do not dispute that Muir is a citizen of Idaho. See Petition (Doc. #1-1), ¶ 2; Muir Affidavit (Doc. 4-3), ¶ 4. Accordingly, the Court cannot exercise general personal jurisdiction over Muir.

## II. Specific Jurisdiction

Plaintiff argues that the Court may exercise specific personal jurisdiction under the Kansas long-arm statute because defendants (1) committed tortious acts within the state and (2) participated in a civil conspiracy with Chapple while he was located in Lenexa, Kansas. See Petition (Doc. #1-1), ¶¶ 4, 28–29, 40, 65, 67–68, 72; K.S.A. § 60-308(b); see also Suggestions In Opposition (Doc. #12) at 8–9.

The minimum contacts test for specific jurisdiction includes two distinct requirements: (1) that defendants "purposely directed" their activities at residents of the forum state, and (2) that plaintiff's alleged injuries "arise out of" forum-related activities. Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 902, 904 (10th Cir. 2017) (quotation marks and citation omitted). For the Court to find specific jurisdiction, plaintiff must allege "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). The aim of the "purposeful direction" doctrine is to ensure that defendants are not

bound to account for merely "random, fortuitous, or attenuated contacts" with the forum state.  Id.

### A. Jurisdiction Based On Tortious Conduct In Kansas

Plaintiff alleges that because defendants committed tortious acts within the state, the Court may exercise specific personal jurisdiction pursuant to the Kansas long-arm statute.  Petition (Doc. #1-1), ¶ 3; K.S.A. § 60-308(b)(1)(B).  An injury occurring in Kansas because of tortious activity outside the state is considered a tortious act within the state for purposes of personal jurisdiction.  Taylor v. Phelan, 912 F.2d 429, 432 (10th Cir. 1990).  Nevertheless, plaintiff must allege facts which show purposeful direction.

When plaintiff alleges an intentional tort, the "effects test" is used to determine whether defendants purposefully directed their activities at the forum state.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1072 (10th Cir. 2008).  Under this test, plaintiff can establish purposeful direction by showing that defendants took (1) an intentional action, that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state.  Id.  To find personal jurisdiction, the test requires more than just harm which plaintiff suffered in the forum state; defendants' conduct must also connect them "to the forum in a meaningful way."  Walden v. Fiore, 571 U.S. 277, 290 (2014).

#### 1. Intentional Action

Because the Court must consider plaintiff's allegations as true, plaintiff must merely allege intentional action by defendants to satisfy the first requirement of the "effects test."  Considering only plaintiff's allegations regarding defendants' tortious conduct, plaintiff alleges that defendants (1) tortiously interfered with its business expectancy and contracts, and (2) accepted a portion of

the mark-ups that IME charged to plaintiff.[7]  Petition (Doc. #1), ¶¶ 32, 34–40, 65–68.  Plaintiff has therefore alleged intentional action on the part of defendants.

        2.  Expressly Aimed

Plaintiff alleges that defendants tortiously interfered with its business expectancy and contracts by accepting improper kickbacks from IME.  Plaintiff claims that this conduct caused it to pay more than necessary for IME services, run over budget on both projects, breach its contracts for these projects and incur financial and reputational harm.

Mere injury to a forum resident or knowledge of plaintiff's residence in the forum state, without more, cannot establish defendants' express aim towards the forum state.  Walden, 571 U.S. at 289–90; see also Eighteen Seventy, LP v. Jayson, 32 F.4th 956, 970–71 (10th Cir. 2022).  To satisfy this element, the forum state itself must be the focal point of the tort.  Shrader v. Biddinger, 633 F.3d 1235, 1244 (10th Cir. 2011).  In other words, the Tenth Circuit centers the express aiming analysis on whether defendants focused on or directed their allegedly tortious conduct at the forum state—not on whether defendants' wrongful conduct was focused on or directed at the interests of plaintiffs who reside in or otherwise have significant connections to the forum state.  Eighteen Seventy, 32 F.4th at 972.

Plaintiff has not alleged acts that defendants aimed at Kansas or established that Kansas was the focal point of any such actions.  To meet the "express aiming" element, plaintiff relies solely on its residence in Kansas, the fact that Chapple worked in Kansas and the fact that it

---

[7]     The petition alleges that Chapple directed IME to submit invoices to plaintiff that contained an undisclosed 10 per cent mark-up and pay defendants proceeds from these mark-ups, and that IME followed through on Chapple's directions.  See Petition (Doc. #1-1), ¶¶ 18, 22, 30–32.  Under the first element of the "effects test," jurisdiction is based only on the intentional acts of defendants, however, and not on the acts of others.  See Dudnikov, 514 F.3d at 1073–74 (10th Cir. 2008).  For purposes of examining specific jurisdiction, the Court therefore disregards plaintiff's many allegations concerning acts of Chapple and IME.

suffered harm in Kansas. Standing alone, these facts do not establish express aiming. See Shrader, 633 F.3d at 1244 (standing alone, plaintiff's residence and suffering of harm in forum do not support jurisdiction); see also Grynberg v. Ivanhoe Energy, Inc., 490 F. App'x 86, 97–98 (10th Cir. 2012) (defendants' attenuated connection to forum insufficient to establish forum as focal point of defendants' torts). The Court therefore cannot find that defendants expressly aimed any conduct at Kansas.

Accordingly, under the "effects test," plaintiff has not shown that by committing tortious acts in Kansas, defendants purposefully directed its activities at the forum state.

B.      Jurisdiction Based On Conspiracy Theory

Plaintiff contends that it has established minimum contacts under a conspiracy theory of jurisdiction because defendants conspired with IME and Chapple to mark up IME invoices by 10 per cent and direct the extra funds to themselves. Defendants argue that plaintiff cannot establish specific personal jurisdiction through a conspiracy theory because it has not alleged (1) personal jurisdiction in Kansas over any alleged co-conspirator or (2) a prima facie claim of conspiracy.

Under a conspiracy theory of personal jurisdiction, "[t]he existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." Melea, Ltd. v. Jawar SA, 511 F.3d 1060, 1069 (10th Cir. 2007); see also Toytrackerz LLC v. Koehler, No. 08-2297-GLR, 2009 WL 1505705, at *17 (D. Kan. May 28, 2009) (court may obtain jurisdiction as to all conspirators "if one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under the long-arm statute"). To establish personal jurisdiction based on a conspiracy theory, however, "plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima

facie showing of conspiracy."  Melea, 511 F.3d at 1069 (quotation marks and citation omitted). Plaintiff successfully makes a prima facie showing of conspiracy "[w]hen the conspiracy and its overt acts are pleaded with particularity."  Dodson Int'l Parts, Inc. v. Altendorf, 101 F. Supp. 2d 1248, 1254 (D. Kan. 2001).  Plaintiff has not satisfied these requirements.

The Tenth Circuit has cautioned that "to hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability."  Melea, 511 F.3d at 1070.  Therefore, in addition to pleading a prima facie conspiracy, due process requires that defendants have minimum contacts with the forum.  Id.  "[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum."  Id.

1. Co-Conspirator's Presence In Forum State

Because plaintiff alleges that Chapple approved invoices and payments to IME from Kansas, plaintiff sufficiently alleges that a co-conspirator committed substantial steps in furtherance of the alleged conspiracy in the forum state.  See Petition (Doc. #1-1), ¶ 69; Svendsen Affidavit (Doc. #12-1), ¶ 17 (Chapple worked out of plaintiff's headquarters in Kansas).

2. Prima Facie Showing Of Conspiracy

To allege a claim for civil conspiracy under Kansas law, plaintiff must allege (1) the involvement of two or more persons; (2) an object to accomplish; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.  State ex rel. Mays v. Ridenhour, 248 Kan. 919, 927, 811 P.2d 1220, 1226 (1991).

For purposes of jurisdiction, the Court considers only "well-pled (that is, plausible, non-conclusory, and non-speculative)" facts alleged in plaintiff's complaint. Dudnikov, 514 F.3d at 1070 (quotation marks and citation omitted). In determining whether plaintiff pleads a prima facie conspiracy, courts apply the standards for determining whether a plaintiff states a claim for relief under Rule 12(b)(6). See Near v. Crivello, 673 F. Supp. 2d 1265, 1274 (D. Kan. 2009); VRWC, L.L.C. v. AUMD, L.L.C., No. 09-2268-JWL, 2009 WL 10709661, at *5–6 (D. Kan. Oct. 15, 2009). To determine whether the complaint states a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the

Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.

Here, plaintiff argues that Chapple, IME and defendants conspired to benefit defendants. The exact details are unclear, but plaintiff apparently argues that Chapple, IME and defendants conspired to mark up IME invoices to plaintiff by 10 per cent, conceal the mark-ups and direct at least a portion of the extra funds to defendants.  In conclusory terms, plaintiff alleges that "[d]efendants conspired with Chapple and IME to overcharge Haarslev and pay those funds to Muir and/or JLM;" that Muir, IME and Chapple "reached a meeting of the minds as to the method and purpose of the conspiracy;" and that "[t]he goal of the conspiracy was for personal financial gain and to further Defendants' own relationship with IME over the interests of Haarslev."  Petition (Doc. #1-1), ¶¶ 65, 67–68.  These are just the sorts of allegations that the Supreme Court and the Tenth Circuit have directed the Court to disregard.  See Iqbal, 556 U.S. 662 (2009) (citing Twombly, 550 U.S. 544, 555–57 (2007) (conclusory allegation of conspiracy insufficient)); Dudnikov, 514 F.3d at 1070 (for purposes of jurisdictional analysis, courts accept only "well-pled (that is, plausible, non-conclusory, and non-speculative) facts").

On close review of the complaint, the totality of plaintiff's allegations do not give rise to a plausible inference that defendants conspired with Chapple and IME.[8]  Plaintiff alleges that Muir and Chapple had an existing business relationship, that Chapple helped to approve defendants as

---

<sup>8</sup> In another case assigned to the undersigned judge, plaintiff brings suit against IME and alleges a similar kickback scheme.  See generally Haarslev, Inc. v. Tom's Metal Enterprises, LLC, No. CV 23-2569-KHV (D. Kan.).  There, plaintiff's complaint alleged that IME "agreed" to add the 10 per cent mark-up to its invoices and that it in fact submitted four invoices to plaintiff in Kansas that contained mark-ups.  See Petition (Doc. #1-1 filed in D. Kan. No. 23-2569-KHV).  On these facts, which alleged a plausible theory, the Court found that plaintiff alleged a prima facie claim of conspiracy.

vendors for plaintiff and that Chapple sought to benefit Muir.[9]  See Petition (Doc. #1-1), ¶¶ 10–13, 15–25.  Plaintiff does not allege that defendants themselves agreed to any kickback conspiracy, that they took steps to further it or that they even knew about it.  See VRWC, 2009 WL 10709661, at *6 (conclusory allegations that defendants reached meeting of minds insufficient to show participation in conspiracy); Velasco Briseno v. Mktg. & Mgmt. Sols., LLC, No. 18-2482-CM, 2019 WL 2646661, at *7 (D. Kan. June 27, 2019) (conclusory allegation that defendants "conspired" without additional facts showing defendant's involvement did not meet showing required for conspiracy theory of personal jurisdiction).  Plaintiff alleges that Chapple "directed Muir to place large orders for materials through another vendor, [IME], because on large orders, Haarslev would have to do background checks."  Id., ¶ 23.  The complaint does not allege that Chapple's instruction had anything to do with a kickback conspiracy.  Plaintiff also does not allege that defendants followed Chapple's direction to submit large orders through IME to evade background checks.  These allegations do not support a prima facie conspiracy claim.

Plaintiff also alleges that Muir admits that IME would pay him if IME "was going to be profitable," but does not allege defendants were not otherwise entitled to money from IME.  Plaintiff has not alleged any relationship between defendants and any contracts with marked-up invoices, or suggested any reason why Chapple and IME would conspire to benefit defendants, who presumably are competitors of IME.  In sum, plaintiff's conspiracy theory, as alleged, is confusing, conclusory and implausible.

Plaintiff has not pled facts in sufficient detail to support a prima facie claim of conspiracy and thus has not established defendants' minimum contacts under a conspiracy theory of

---

[9]  The complaint does not allege a motive for Chapple to engage in the purported conspiracy.

jurisdiction.

Accordingly, the Court cannot exercise personal jurisdiction over defendants.  The Court therefore sustains defendants' motion to dismiss plaintiff's claims under Rule 12(b)(2) for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss And Memorandum In Support (Doc. #4) filed January 2, 2024 is **SUSTAINED.**

Dated this 25th day of March, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge